IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                        Plaintiff,<br><br>     v.<br><br>MARK MIZERA individually, and MIZERA CHEVROLET, INC.<br>                        Defendants. | FILED: SEPTEMBER 3, 2008<br>08CV5028<br>JUDGE LINDBERG<br>MAGISTRATE JUDGE KEYS<br><br>CH |

**COMPLAINT
FOR SEXUAL HARASSMENT
IN VIOLATION OF 42 U.S.C. § 2000e,** *et seq.***,
(TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED)
THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201** *et seq.***,
ASSAULT, BATTERY, AND
RECKLESS AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff, JANE DOE, for her complaint against MARK MIZERA and MIZERA CHEVROLET, alleges and states as follows:

**Introduction**

1.      Jane Doe was hired by Mizera Chevrolet in September of 2006, on the orders of its owner, Mark Mizera without an interview, to manage the business development center.  Shortly thereafter, Defendant Mizera began requiring Plaintiff to meet him one to two times a week for sexual encounters during which he undressed her, played sexually graphic movies, required her to spread her legs while giving him a massage, required her to touch his genitalia and bring him to climax, touched her breasts, penetrated her genitalia with his fingers causing her physical pain, required her to perform fellatio upon him, and threatened her job for failure to do so all in spite of her protests and attempts to avoid such encounters.  By May of 2007, Plaintiff had begun a pattern of outright refusals to engage in the conduct, but continued to acquiesce on a less frequent basis in an effort to retain her employment.  On July 13, 2007, after Plaintiff became consistent in her refusals to acquiesce, Defendant terminated her because "he could not trust her anymore."  Plaintiff files this Complaint for *quid pro quo* sexual harassment and related common law torts, both for the required sexual conduct and for her termination.

**Parties**

2.      Plaintiff, JANE DOE, (hereinafter "Plaintiff"), is a female individual residing in the City of Chicago, State of Illinois, and within the Territorial Jurisdiction of the United States District Court for the Northern District of Illinois. At all times relevant hereto, Plaintiff was an "employee" within the definition of §3(e) of the Fair Labor Standards Act, 29 U.S.C. §203(e).

3.      Defendant MARK MIZERA (hereinafter "Defendant Mizera") is a male individual who on information and belief, is a citizen and resident of the State of Illinois and resides within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. Defendant Mizera is sued in his individual capacity.

4. Defendant MIZERA CHEVROLET, is on information and belief a corporation which at all relevant times was licensed and doing business in the territorial jurisdiction of the United States District Court for the Northern District of Illinois.

## Jurisdiction

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. S § 1343 (a)(3) and (4), because this complaint is filed for violations of Federal Law, 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended). This Court has supplemental jurisdiction over the state law claims pled in this Complaint.

6. On August 30, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging sexual harassment, Charge Number 440-2007-07540.

7. On July 10, 2008, the EEOC closed its file without completing its investigation (upon request by Plaintiff) and issued a Notice of Right to Sue on Charge Number 440-2007-07540.

8. This case is filed on ***, less than 90 days from the issuance of the notice of right to sue and is therefore timely filed.

## Venue

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because, on information and belief, all parties reside in this district and all events relevant to this complaint took place in this district.

**Events**

The Hiring

10.     Defendant Mizera Chevrolet was an automobile dealership owned by Defendant Mark Mizera.

11.     Plaintiff was informed by an acquaintance that Defendants were seeking to hire an individual to take leads on automobile sales through a new online sales device called a "Business Development Center."

12.     Plaintiff interviewed for the position on or about Tuesday, September 26, 2006.

13.     On that day, Plaintiff submitted an application and sat in a seat in the showroom outside of Defendant Mizera's office for an hour.

14.     Although Plaintiff was never interviewed for the position, Mr. Mizera's assistant, Mr. Vince Clemons, approached her and informed her that she had been hired for the job and would start work on that Friday, September 29.

15.     Plaintiff worked only occasional hours in the first few weeks primarily greeting customers, until the Business Development Center online had been activated.

The Initial Sexual Contact

16.     On or about Wednesday, November 7, 2007, Rolando DeLuna, (hereinafter "Mr. DeLuna"), pulled Plaintiff into a side office directly next to Mr. Mizera's office on the showroom floor and told her that the owner, Mr. Mizera, would like to see her that night.

17.     Plaintiff initially refused, but Mr. DeLuna told her that "It will be good for your job."

18.     Plaintiff had no desire to "see" Defendant Mizera that night and said "I don't know" and insisted that she would be unable to find a babysitter for her children.

19. At about 8:30 that night, Mr. DeLuna called Plaintiff on her cell phone, ordered her to come in at 10:30 that evening and that she had to find a babysitter.

20. Mr. DeLuna also asked Plaintiff what kind of beer she drank and Plaintiff responded that she did not drink.

21. Mr. DeLuna then insisted that she should drink and demanded that she identify a kind of beer.

22. Mr. DeLuna told her to meet him on Long St., outside the dealership that evening which she did.

23. At that time he handed her a bottle opener and told her to wait for Defendant Mizera.

24. Defendant Mizera appeared a few minutes later, unlocked the showroom and let her in.

25. He then took her back to his office, locked the door, and turned the large screen television away from the windows and put in a DVD of American Pie Presents: The Naked Mile, a movie not appropriate for television and rated R "for pervasive strong sexual content and crude humor, nudity, language, drinking and some drug use – all involving teens."[1]

26. Defendant Mizera then put his hand on Plaintiff's thigh and asked her, "How do you like working here?"

27. He then moved the Plaintiff closer to him and put his arm around her.

28. He then tried to kiss Plaintiff, but she turned her head and tried to avoid him.

29. Defendant Mizera next stood up and walked over to the love seat where he laid down and told her to come sit on top of him.

---

[1] Information cited here comes from the Internet Movie Data Base at http://www.imdb.com/title/tt808146.

30.  Plaintiff walked over to the love seat and sat down, at which point the Defendant touched her breast and put his hand up her shirt.  He then took off her bra and took off her shirt, leaving her topless.

31.  At this point, the Plaintiff complained that other people would be able to see them and Defendant Mizera responded, "Don't worry, nobody can see."

32.  He then took off his shirt and continued to fondle the Plaintiff's breasts.

33.  Defendant Mizera then slid his hand down the Plaintiff's pants and inserted his finger in her labia.

34.  He then started to take the Plaintiff's pants off and continued to finger her genitalia.

35.  Next, Defendant Mizera began to take off his pants and underwear, at which point the Plaintiff demonstrated how uncomfortable she was and stood up.

36.  He then took the Plaintiff's hand and placed it on his penis where he motioned it back and forth in a stroking manner.

37.  At this point, Defendant Mizera took his hand off of the Plaintiff's hand, which was still on his penis, and started to touch her groan area through her panties.

38.  The Plaintiff took this opportunity to remove her hand from his penis.

39.  Defendant then replaced her hand on his penis and used it to stoke his penis until he climaxed.

40.  Following his climax, Defendant Mizera went to his bathroom at which point the Plaintiff immediately dressed herself.

41.  He then returned from the bathroom, still naked, and then proceeded to get dressed.

42.  Once dressed, Defendant said, "Ok, time to go" and unlocked the door to the office and let the Plaintiff leave.

43. This type of encounter occurred between Defendant Mizera and Plaintiff one to two times per week, except for one week where the Defendant was on vacation.

44. The Monday he returned from vacation, a similar incident occurred.

45. At this point, Defendant Mizera began having the Plaintiff undress for him.

46. Once naked, he would have the Plaintiff sit on top of the back to the sofa with her legs spread apart and then he sat between her with his back towards her so she could give him a massage.

47. He would then go and get a blanket and pillow and move them to the floor at which point he would start touching her breasts, in an effort to arouse her.

48. Next, he would slide his hand down her body and play with her vagina and anus and then rub her clitoris.

49. At this point Defendant Mizera would penetrate the Plaintiff's vagina with his fingers, typically using two or more, which she found painful.

50. While penetrating her with his fingers, the Defendant would often cut her with his long fingernails and should could later feel it while washing. She felt the affects of this for several days after the occurrence.

51. After he was done penetrating her vagina with his fingers, Defendant Mizera than pushed the Plaintiff's head toward his penis and said, "blow me." He then proceeded to hold her head down in his groin area while she performed fellatio.

52. In March 2007, things progressed to the point where Defendant Mizera asked the Plaintiff if she had any sex toys for him to use. She responded "no". He asked her if she had a vibrator. She also responded "no". He indicated to her that he would like to use sex toys on her.

53. Around this time, Mr. DeLuna approached the Plaintiff to come to the office that night.

54. Plaintiff became desperate to remove herself from these sexual encounters and informed him that she could not come because she was unable to find a babysitter.

55. At this point, Mr. DeLuna said, "Don't worry, Mark will pay for a babysitter," and handed the Plaintiff $100.

56. When the next encounter occurred, Defendant Mizera expressed that he wanted to have sex with the Plaintiff. In an effort to deter him, she told him that they couldn't because she did not have a condom. He replied, "Don't worry, I do."

57. The Defendant the proceeded to get up and put a condom on his penis. He then pulled the Plaintiff toward him, facing him, with his hands on her hips.

58. At this point, the Defendant began to penetrate the Plaintiff's vagina with his penis. This lasted for approximately two minutes until his penis was no longer erect.

59. Defendant Mizera became angry with the Plaintiff because he was unable to hold his erection and took off his condom.

60. He then told her to perform fellatio on him and when she hesitated, he physically forced her head down to his penis with his hand.

61. In May, the Plaintiff began to outright refuse to have sexual encounters with the Defendant.

62. To avoid Defendant Mizera's sexual advances, the Plaintiff began to complain of feeling ill to Mr. DeLuna.

63. Mr. DeLuna informed the Plaintiff that, "if you are sick you should not come back to work until you have a doctor's note."

64. On June 23, Defendant Mizera informed the Plaintiff that he found another woman who worked in the showroom attractive. He expressed an interest in having a "threesome" with the

Plaintiff and the other woman.  At the time he was also playing a pornographic film starring Jenna Jameson.

65.　　The Plaintiff continued to refuse the sexual advances of Defendant Mizera.

66.　　When she would refuse, Mr. DeLuna would tell her that, "Mark is very disappointed" in her.

67.　　The result of the Plaintiff's refusals was a campaign of harassment by Defendant Mizera.

68.　　The Plaintiff was not given the Fourth of July off, while every other employee was.

69.　　The Plaintiff was no longer allowed to sell cars on Saturday's, which allowed her to supplement her low income with commissions.

70.　　The Plaintiff was written up for wearing "inappropriate clothing", when she wore nothing but standard business attire.

71.　　The Plaintiff was also forced to start leaving the door to her office open which made it difficult for her to do her job which required her to make phone calls.  When she commented to Defendant Mizera the difficulties she was having doing her work because of the noise from leaving her door open he responded by saying, "I don't give a fuck, it's my company."

72.　　The Plaintiff was subsequently fired.  At the time of her termination, Mr. DeLuna informed the Plaintiff that the reason for her firing was, "Mark doesn't trust you anymore."

## Count I

### Demand for Relief for Sexual Harassment
### in Violation of 42 U.S.C. § 2000e
### (Title VII of the Civil Rights Act of 1964 as amended)
### Against Defendant Mizera Chevrolet

73.     Plaintiff restates and realleges paragraphs 1 through 72 as paragraph 73 of this Count I.

74.     By virtue of the foregoing, Defendant Mizera Chevrolet, Inc., has violated Title VII of the Civil Rights Act of 1964.

75.     As a result of his actions, Plaintiff was constructively discharged, and has suffered physical pain, loss of income, humiliation, degradation, and severe emotional distress.

76.     In light of the persistent nature of Defendant Mizera's conduct in the face of rejections and complaints by Plaintiff, Defendant Mizera's actions were wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Mizera Chevrolet, Inc. for lost wages, for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

### Count II

### Demand for Relief for
### Reckless and/or Intentional Infliction of Emotional Distress
### Against Defendant Mark Mizera and Defendant Mizera Chevrolet

77. Plaintiff restates and realleges paragraphs 1 through 76 as paragraph 77 of this Count II.

78. By virtue of the foregoing, Defendant Mizera's conduct was extreme and outrageous.

79. As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a termination.

80. As Defendant Mizera's employer, Defendant Mizera Chevrolet is liable under the doctrine of *Respondeat Superior*.

81. In light of the retaliatory nature of Defendant Mizera's conduct that conduct was wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Mark Mizera and Defendant Mizera Chevrolet for lost wages, for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count III

### Demand for Relief for
### Assault Against Defendant Mark Mizera and Defendant Mizera Chevrolet

82. Plaintiff restates and realleges paragraphs 1 through 81 as paragraph 82 of this Count III.

83. By virtue of the foregoing, Defendant Mizera has, on numerous occasions, with the intent to cause of harmful and/or offensive touching, put Plaintiff in reasonable apprehension of imminent of harmful and/or offensive contact.

84. As a result of this violation, Plaintiff has suffered physical pain, loss of income, humiliation, degradation, and severe emotional distress.

85. As Defendant Mizera's employer, Defendant Mizera Chevrolet is liable under the doctrine of *Respondeat Superior*.

86. In light of the retaliatory nature of Defendant Mizera's conduct that conduct was wanton and malicious warranting the imposition of punitive damages.

87. WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Mark Mizera and Defendant Mizera Chevrolet for lost wages, for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count IV

### Demand for Relief for
### Battery Against Defendant Mark Mizera and Mizera Chevrolet

88. Plaintiff restates and realleges paragraphs 1 through 87 as paragraph 88 of this Count

IV.

89. By virtue of the foregoing, Defendant Mizera has, on numerous occasions, with the intent to cause harmful and/or offensive contact, caused such harmful and/or offensive contact.

90. As a result of this violation, Plaintiff has suffered physical pain, loss of income, humiliation, degradation, and severe emotional distress.

91. Defendant Mizera's conduct was wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Mark Mizera and Defendant Mizera Chevrolet for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

Respectfully submitted,

Jane Doe


By:s/Aaron B. Maduff
One of her attorneys

Aaron B. Maduff
Atty. No. 06226932
Maduff & Maduff, LLC
One East Wacker Drive
Suite 2122
Chicago, Illinois 60601
312/276-9000